IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BOBBY CHRIS MAYES )<br>)<br>Defendant. ) | Case No. CR-20-240-F |

## AFFIDAVIT OF VICKI ZEMP BEHENNA

I, Vicki Zemp Behenna, declare as follows under penalty of perjury:

1. I am a lawyer licensed in Oklahoma and I practiced in the Western District of Oklahoma. I was retained by Chris Mayes to defend him in the above-referenced case.

2. Tens of Thousands of pages of discovery was produced by the Government during discovery. I no longer have access to the discovery because I left private practice in January 2023. This affidavit is made based upon my personal recollection.

3. Mr. Mayes defense team included me, Rachel Jordan, Billy Bock, Michelle Green, Rodney Hunsinger, and Brett Behenna.

4. I vaguely remember Mr. Mayes discussing a handwritten note from Andy Elliott. I believe Mr. Mayes said that it was written by Andy Elliott, but he was unable to explain how he came to possess it.

5. I believe I had a discussion with Brett Behenna shortly after Mr. Mayes brought the handwritten notes to my attention. Brett asked me if he should incorporate the handwritten notes into his proposed cross-examination. Brett and I discussed his cross-examination strategy, and it

was my decision to not proceed with cross-examination using handwritten notes. It was and still is my opinion that the notes were a distraction from a very strong cross-examination strategy that Brett was developing.

6. Mr. Mayes was aware of the cross-examination strategy for Andy Elliott. I do not remember Mr. Mayes saying that he wanted the handwritten notes, allegedly from Andy Elliott, used during Mr. Elliott's cross examination.

7. Additionally, Mr. Mayes did not ask "repeatedly" during trial for the defense lawyers to use the handwritten notes allegedly made by Andy Elliott. As far as I can remember, after the initial discussion of the notes, no further discussion was had on the use of the notes at trial.

8. I remember Mr. Mayes being very happy with the cross-examination of Andy Elliott. I believe we had a few breaks while Andy Elliott was on the stand, and I do not remember Mr. Mayes saying you need to ask Mr. Elliott about the handwritten notes. Mr. Mayes was pleased with how the trial was going, in particular the cross-examination of Andy Elliott. I have no recollection of Mr. Mayes being angry or demanding that the handwritten notes be used.

9. I believe I prepared the witness and exhibit lists for trial. I do not list as exhibits documents that are going to be used solely for impeachment during cross-examination.

10. I am not aware of any handwritten letter that Mr. Elliott wrote to the United States Attorney's Office. During trial when Mr. Elliott said that "we gave them a handwritten letter," I understood that to mean the proffer letter his attorney Scott Adams had written to the government. I was aware of the proffer letter Scott Adams provided to the Government prior to trial. That is what I thought Andy Elliott was referring to.

FURTHER AFFIANT SAYETH NOT.

I state under penalty of perjury that the foregoing is true and correct.

_7/29/25_  
Date

_____  
Vicki Zemp Behenna

Subscribed and sworn before me this 28th day of July, 2025.

_Cheryl Rahmanzadeh_  
Notary Public

My Commission Number: 03004465

My Commission Expires: 4-26-2027

[Notary Seal: CHERYL RAHMANZADEH, NOTARY PUBLIC, STATE OF OKLAHOMA, # 03004465, EXP. 04/26/27]