# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Case No.  CR-20-240-F |
| ) | |
| BOBBY CHRIS MAYES, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT BOBBY CHRIS MAYES' REPLY TO THE UNITED STATE'S RESPONSE TO DEFENDANT'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C. §2255

Reply to the United States' Response to Defendant's Motion to Vacate Sentence:

**Mr. Mayes told trial counsel by email precisely where he got the notes, how he came to obtain the notes and when he obtained the notes**

The government anchors its response heavily on Mr. Mayes not telling trial counsel how he obtained the handwritten notes,[1] and that is why trial counsel didn't use the notes. Doc. no. 437, at 13,15,16,18,20,21 ft. note 4.  Contrary to the government's claim, Mr. Mayes told trial counsel exactly when and how he obtained the handwritten notes.  There was no "mysterious introduction" of the notes.  Doc. no. 437, at 14.

Remarkably, the government ignores contemporaneous written evidence that defeats its claims. Approximately two months before trial, by email dated August 23, 2021, Mr.

---

[1] On 17 different occasions in 9 pages, the government repeats the claim Mr. Mayes refused to explain where he got the notes, was unable or unwilling to explain the origin of the notes or how he came to possess them.  Doc. no. 437, at 13, 14, 15, 16, 18, 19, 20, 21 ft. note 4.

Mayes told his trial counsel exactly how he came to possess the notes. "I started going through my Tinker file today and came across notes Andy had written in reference to Donna's FBI interview and his thoughts." **Ex. 1, August 23, 2021 email, Ex. 3, ¶3,4,5,8,12.**



**Andy Donna notes**
1 message

Chris Mayes <chris@bigredsports.com>                                    Mon, Aug 23, 2021 at 9:59 AM
To: Vicki Behenna <vzb@lawfirmokc.com>, Vicki Behenna <vzb@lawokc.com>, Rodney Hunsinger
<rodney@hblawpartners.com>, Jordan Rachel <RJordan@lawokc.com>

I started going through my Tinker file today and came across notes Andy had written in reference to Donna's FBI interview and his thoughts.

I also have emails and texts. I will get the entire file to Rodney this week.

These are completely opposite what he told the FBI.

The government and trial counsel omit and ignore the irrefutable contemporaneous email Mr. Mayes sent August 23, 2021,[2] to counsel Vicki Behenna, Rodney Hunsinger, and Rachel Jordan.  Mayes' email eliminates the claims Mr. Mayes supposedly refused or was  unable to explain to counsel where he got the notes, where the handwritten notes "came from or how or when". Doc. no. 437, at 13,15,16,18,20,21, fn. 4; Vici Behenna Aff., ¶4; Brett Behenna Aff., ¶¶ 11, 26.  **Mayes Dec'l, Ex. 3, ¶3,4,5,8,12.**

The government, without evidence, claims Mr. Mayes "...concocted a story about the notes in a desperate attempt to obtain a new trial.", and that the "true facts" are different than those relayed by Mr. Mayes in his declaration." Doc. no. 437, at 8,12,14,18.  Not true.  The

---

[2]

Trial began November 3, 2021, approx two months after Mr. Mayes sent the August 23, 2021, email. It is not disputed the handwritten notes were placed in a box containing files by Mr. Adams that were given to Mr. Bock on September 25, 2020.  Doc. no. 437, at 12.  Bock states Mayes' inquiry about the notes "...occurred months or years prior to the trial" Bock Aff., ¶ 10. It could not be "years" before trial as the box was picked up by Mr. Bock on September 25, 2020.

government's claimed "true facts" are not supported by contemporaneous evidence, but are contradicted by contemporaneous evidence, including: 1) the August 23, 2021 email with attached handwritten notes; 2) the upload of the file marked "Andy Elliot notes" to the iDrive folder – shared with Mr. Behenna and other counsel on August 31, 2021; 3) the Acknowledgment of Receipt dated September 25, 2020 signed by Mr. Bock; and 4) the upload to the trial counsels' Exhibits folder the day before trial. **Exhibit 1; Exhibit 2 (Timeline).** The true facts are counsel had the notes August 23, 2021, there was no secret of how they were obtained, and counsel knew Mr. Mayes wanted to use them to impeach Elliott. Mayes Dec'l, ¶¶ 3-8, 11, 12.

Pretrial, trial counsel knew Mr. Mayes discovered Elliott's notes by the  August 23, 2021, email.  There was no effort on Mr. Mayes' part to "defraud" the Court..  Doc. no. 437, at 12.[3]  Mr. Mayes told trial counsel exactly where he got the notes.  Contrary to the government's claim Mr. Mayes never asked Mr. Behenna to use the notes, Mr. Mayes' email states Andy's notes "...are completely opposite what he told the FBI." **Ex 1**. The claims the notes "never came up again" is contrary to the contemporaneous evidence. Doc. no. 437, at 15; Ex. 3, at ¶15.  Mr. Behenna claims, and Mr. Mayes denies, that Mr. Mayes "understood" his "concerns" and "he just wanted me to see it." Doc. no. 437-3, ¶¶15,16; Ex. 3, ¶13. However, it doesn't comport with the fact Mr. Mayes sent the email with the notes to counsel, explained how he came across them "today" and wrote about the impeachment value. **Exhibit 1**.

---

[3]

The government's response raises events that happened after the trial and verdict in the instant case, such as conduct in Case No. CR-23-53-F.  Doc. no. 437, at 6-8. The government is attempting to divert the Court's attention away from the grounds raised in the 2255 motion by smearing Mr. Mayes with irrelevant content.

**The Handwritten Notes were Material Evidence and Highly Relevant to the Entire Case**

The government wrongly claims the notes were not "particularly relevant" and only covered "a tiny fraction of the overall case." Doc. no. 437, at 13,14,35. The government attempts to minimize the powerful material evidentiary value of the handwritten notes. Elliott's handwritten notes, the only written evidence about the claimed bribery, establishes there was no bribery. The notes never mention Mr. Mayes and the notes provide the reason Elliott gave Mullins money "TO HELP HER". Doc. no. 401-1, 1-4; Doc. no. 422-1. The handwritten notes would have impeached Elliott's testimony and would have had a powerful impact on the jury. Had effective cross examination occurred, the jury would have had before it Elliott's undisputed lie he did not have Mullins' 302 with him when he wrote the handwritten notes (as in his deposition testimony). Doc. 422-1, Tr. 12. The jury would have also known the undisputed Elliott lie, that he was truthful and complete with the government. Doc. 422-1, Tr. 25. This evidence would have devastated the government's case discrediting their key witness. The government claims the notes have "marginal relevance" because of Mr. Mayes' refusal to explain how he got the notes. Doc. no. 437, at 15. However, Mr. Mayes has debunked this misguided assertion by his email to counsel and all the contemporaneous evidence. And, the government actually concedes Elliott's notes were relevant to Mr. Mayes' defense and his innocence by stating "The strategy to impeach Mr. Elliott was not to deny that bribery occurred, but to try to show that Mr. Elliott was untrustworthy in general and that *his claim that Chris Mayes was involved in the bribery was not true*." Doc. no. 437, at 14 (Emphasis added). The notes were material and should have been used at trial.

**It was Not Sound Trial Strategy Not to Use the Notes**. Elliott undisputedly lied in his deposition. Doc. no. 422-1, at 12,25. It can not be sound trial strategy to not impeach Elliott

with the irrefutable evidence he lied about using the Mullins 302, and to the government and broke his nonprosecution agreement. Trial counsel had in their possession the notes evidencing Elliott had violated a fundamental term of his immunity agreement.  It is unreasonable for trial counsel to now claim it was sound trial strategy not to use the notes. Elliott's perjured testimony alone proves counsels' trial strategy failed to protect Mr. Mayes' rights to effective assistance.  Trial counsels' claim using the notes would have been a "distraction" does not make sense  with the undisputed evidence of Elliott's perjuries.  Doc. no. 437, at 16.  Counsels' assertion that after Mr. Mayes said he could not disclose the mysterious origin of the notes for Mr. Behenna's protection, Mr. Mayes "agreed with the decision not to use the notes,".  Doc. 437, at 18; Mr. Behenna Aff., ¶¶ 11, 26.  However, Mayes did not agree with the decision not to use the notes.  Mayes Decl., ¶13.  With outcome determinative evidence of perjury and lying to the government, it was ineffective to not cross examine with the valuable evidence, especially in light of the fact counsel was told exactly how Mayes had obtained the notes, dispensing with all of the "Mayes refused to explain where they came from" claims. Doc. no. 422, at 21. Fn. 4; Ex. 3, ¶¶ 3-8, 11, 12.. The handwritten notes were uniquely probative impeachment material, they were Elliott's own words, contradicting his trial testimony, which undermined Elliott's credibility.

**Mr. Mayes did not have "a hand in generating" the Handwritten Notes.**  The government's claims Mr. Mayes refused to explain where the handwritten notes came from have been debunked.  The government misguidedly claims Mayes "had a hand in generating them." Ex. 3, ¶9 This claim is fatally flawed.  The government relies solely on Mr. Elliott's deposition testimony – proven to be false regarding his obvious use of Mullins' 302, which he denied under oath, and his lie to the government that he would be truthful and complete.

**Material Facts Uncontested by the Government in its Response**.  Under Rule 5(b) of the Rules Governing Section 2255 Proceedings, uncontested facts must be accepted as true. Rule 5(b) states the response must "address the allegations in the motion". *Id.*   The government failed to contest the material evidence Mayes presented in his Memorandum. Elliott lied in his deposition about not using Mullins' 302.  Instead, the government takes Elliott's testimony as true that Mayes had a "hand in generating" rather than disputing the material fact Elliott lied at the deposition, which was raised in Mr. Mayes' Memorandum. Doc. no. 422, at 27-32. Despite the centrality of this material fact, the government's response was silent. Elliott's lies went to a central theme by the government (Mayes was always telling Elliott to do criminal acts).  The reason the government didn't contest this material fact is because the language in the handwritten notes was some times verbatim from Mullins' 302, which Elliott claimed he never saw.  Elliott falsely testified he "...didn't have any documents other than some questions from Mr. Adams." Doc. no. 422-1, Tr. 12. Doc. no. 422, at 27-30; Doc. no. 422-1, at 45, 48. Also undisputed by the government is the pled material fact Elliott lied at trial about being truthful and complete with the government as required in his nonprosecution agreement. Doc. no. 422, at 31, 32. Fn. 6.   An allegation of fact must ordinarily be accepted as true unless the allegation is contradicted by the files and records before the court.  *Runge v. United States*, 427 F.2d 122, 126 (10th Cir. 1970); Rule 5(b).

**The Entire Case was Affected by the Credibility of Mr. Elliott**.  The government claims it is not true the entire case hinged upon Andy Elliott. Doc. no. 437, at 36.  The government's contention directly contradicts the Court's pronouncement at trial. "...the jury is not going to have to be reminded that an extraordinarily prominent issue in this case is the credibility of Mr. Elliott." Doc. no. 422-3, at Tr. 2432. All the parties at trial agreed Elliott was the

governments' key trial witness. Contrary to the government's present assertion, the prosecutor stated to the Court: "...as this Court has recognized, the most important aspects of the case, and particularly from the defense side, are evidence of good character of Mr. Mayes and evidence or allegations that Andy Elliott is a liar." Doc. no. 422-3, at Tr. 2448.

The government's claim the subject matter of the notes were only a small part of the case [Doc. no. 437, at 35,36] is not supported by the record. The first three days of trial dealt mostly with the bribery. By wrongly limiting the claimed scope of Elliott's credibility to only the bribery allegations and claiming it was only a "tiny fraction" of the entire case, the government discounts the massive scope of evidence Elliott's testimony actually encompassed. Mr. Elliott's credibility went to every aspect of the government's case. Elliott's testimony was used by the government to establish Mr. Mayes' alleged knowledge of and involvement in the substantive counts and the conspiracy counts. Elliott testified extensively how Mr. Mayes told him do illegal acts, was the one "in charge", Mr. Mayes knew about the fake income, they talked about the illegal acts all the time, Norman Pawn & Gun was Chris and Gooch's idea, and everything he [Elliott] did was with Mayes' supervision. Vol. II, Tr. 209, 217, 219, 242, 243, 270, 266, 282, 323, 324, 447. Elliott was used by the government to discuss, and/or sponsor, and/or authenticate approx. 111 exhibits. The government heavily relied upon Elliott's testimony to testify about documents as "ordinary course of business", King Cash, Norman Gun and Pawn, and explain contracts and documents. *Id.*

The government contends Mr. Elliott was impeached by trial counsel by prior inconsistent statements and other ways. Doc. no. 433, at 33. But what the government doesn't speak to is Elliott's false testimony during the trial in front of the *jury* was not

impeached. Elliott should have been impeached with the handwritten notes and his lies to the government and to the jury (not disclosing the handwritten notes and circumstances surrounding them). In fact, the opposite occurred. Elliott repeatedly bolstered himself, falsely telling the jury he was telling the truth. The government's contention Elliott was "impeached"or that a "little bit more" impeachment of Elliott fails to acknowledge this massive material impeachment evidence that should have come into the trial. Doc. no. 437, at 30,33,34. Had trial counsel cross-examined on the handwritten notes at trial as was reasonable and effective, Mr. Elliott would have been caught lying. The jury would have also heard the undisputed fact Elliott lied to the jury about being complete and truthful with the government. Elliott's undisputed lies materially and adversely affects Mr. Elliott's entire credibility. *Runge, supra.* There is a reasonable probability that but for counsel's unprofessional errors, there is a substantial likelihood of a different result. *Strickland v. Washington,* 466 U.S. 668, 671,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**Undisputed Perjury by Elliott.** In addition to Elliott's perjury about not using Mullins' 302 to write his notes, Elliott admitted at the deposition he did not tell the government about the handwritten notes he supposedly wrote at Mayes' direction. Doc. no. 422, at 25. Mr. Elliott admitted he unilaterally decided to conceal this material evidence from the government. Doc. no. 422-1, at 25, 26. Not only did Elliott not testify at trial about hiding the notes from the government, his concocted story of the notes, he also did not say any thing about the concealment of the notes or the notes drafting during the government's interview with him on October 2, 2020. Doc. no. 422-1, at 25. Intentional omissions operates both as a breach and as concealment in violation of federal law. "...[A] bad faith, intentional, substantial omission . . . does constitute a materially false statement and thereby a breach of

the agreement." *Id.  United States v. Beasley*, 2014 U.S. Dist. LEXIS 68684, *16 quoting

with approval *United States v. Castelbuono*, 643 F. Supp. 965, 971 (E.D. N.Y. 1986). The

government has irrefutable evidence Elliott lied under oath at trial.[4] Doc. no. 422-3, Tr. 203.

Given the materiality of Elliott's perjury, Mr. Mayes' convictions cannot stand.  Perjury is

"false testimony concerning a material matter within the willful intent to provide false

testimony, rather than as a result of confusion, mistake or faulty memory." *United States v.*

*Dunnigan*, 507 U.S. 87, 94 (1993); 18 USCS § 162.1.

For the government to claim the handwritten notes have marginal, incremental and

little probative value is disingenuous.[5]   Doc. no. 437, at 31,34,35.  The government fails to

address Elliott's criminal conduct did not stop when he signed his nonprosecution agreement,

it continued throughout the trial when he lied to the jury about his complying with his

immunity deal by not disclosing the notes, and lied in his deposition which would have come

out at trial if cross examined about viewing the Mullins 302 as he drafted the notes.  It was

ineffective assistance of counsel not to conduct the cross examination on Elliott's perjury.

If the jury had known that Elliott committed perjury, there is a substantial likelihood of a

different result.

**There was no Privilege in the Handwritten Notes**.  The handwritten notes by Elliott were

not a privileged "core"communication to his lawyer.  Doc no. 437, at 21, ft. note 4. See

---

[4]

The deal with the government required Elliott to "...truthfully disclose all information with respect
to the activities of himself and others concerning all matters related to the above described
offenses..."  The "above described offenses" included "bank fraud". Doc. 422-1, Pg. 49.

[5]

The government claims making Elliott look like a scoundrel and rehiring him made it look like Mr.
Mayes was the same.  Doc. no. 437, at 19.  Presenting the truth about Elliott's lies does not make
Mr. Mayes the same as Elliott. Elliott's rehiring was irrelevant.

Memorandum., Doc. no. 422, at 26. The privilege was waived by Elliott's claim he and Mr. Mayes "concocted" the notes together. Doc. no. 422-1, at ft. note 13; *United States v. Bernard*, 877 F.2d 1463, 1465 (10th Cir. 1989). The government states the notes were not used at trial because Mr. Mayes refused to explain where the notes came from and not because of any alleged privilege issue. Doc. no. 437, at 21, ft. note 4.

**Elliott's Deposition Lies Would Have Affected the Outcome.** Elliott's lie would have been exposed to the jury when identical language was shown in the handwritten notes and the Mullins' 302. See comparison of notes and 302 in Doc. no. 422, at 27-24. This undisputed deceptive narrative Elliott supplied at his deposition would have uprooted the government case, but the jury did not hear it due to ineffective assistance of counsel. The government's claim Mr. Mayes never explained how the notes proved his actual innocence is not correct. Mr. Mayes presented compelling evidence and well founded reasons in his Memorandum why the notes proved his actual innocence. Doc. no. 422, at 18-21.

**Ground Two: Failure to Investigate.** The government responded to trial counsel's failure to investigate ground by claiming the ground is dispelled by Mr. Mayes refusing to explain where he obtained the notes, which is "tantamount" to "don't investigate." Doc. no. 437, at 20, 21. Mr. Mayes told his lawyers exactly where he got the notes. **Ex. 1; Ex. 3,4,8.** The government's reliance on trial counsel's assertions ignores Mayes' August 23, 2021, email (and other contemporaneous evidence, the Google Drive folder uploads on August 19, 2021).

Mr. Mayes' email to trial counsel "These are completely opposite what he told the FBI" proves Mr. Mayes wanted to use the notes to impeach Elliott. Yet trial counsel still did not investigate. Mr. Behenna acknowledged the handwritten notes were considered impeachment. "I would not have given a copy of that exhibit to the government because I

would consider it impeachment." Doc. no. 437-3, at Brett Behenna Aff., ¶ 24. Mr. Bock stated Mr. Mayes believed the handwritten notes were a "smoking gun" or useful in his defense in some way. Doc. no. 437-3, at William Bock Aff., ¶ 8. Trial counsel's failure to investigate the handwritten notes constitutes ineffective assistance of counsel. Trial counsel did not dispute that I told them to call Mr. Adams. Doc. no. 401-4, ¶9.

**Ground Three: Elliott's Handwritten Letter.** The government's claim this issue is a "misguided attempt" based on a supposed "...tortured and misleading view of the record" is not true. The government choosing this route to describe a legitimate legal basis for the granting of a 2255 establishes the government's panic.[6] This issue was raised based on Elliott's unambiguous testimony a handwritten letter existed and the bases for trial counsel's ineffectiveness was concisely set forth based on his testimony. Post trial, the government now claims the handwritten letter does not exist. So Mr. Mayes was required to argue both. There was no difficulty following Mayes' arguments. The plain meaning of Elliott's testimony about the handwritten letter – not a typed letter – is neither tortured nor is it misleading. It is a misguided attempt by the government to turn black into white. The government's claim there wasn't a handwritten letter just because Elliott testified he got immunity after the proffer letter doesn't mean Elliott didn't mean what he said at trial, that a handwritten letter was given to "them". Or, according to the government, that "Everyone knew that Mr. Elliott was talking about the proffer letter, and "everyone understood" were

---

[6] The government complains about a few questions Elliott was asked at the deposition regarding if anyone from the U.S. Attorney's office or agents or anyone had asked him what he meant when he said "No, the handwritten letter before that". Doc. no. 437, 26, 27. Elliott, even though he had a month to prepare, was caught off guard. Elliott then went to his go to answer – he doesn't understand – and continued his evasive responses. The questions were not "muddled and confusing". The government did not object to the questions. Finally, Elliott answered no one ever asked him asked him about the handwritten letter. Elliott Depo., 422-1, at 29, 32. *Napue, infra.*

supposedly "talking about" the proffer letter.   Doc. 437, at pgs 25, 29, 30, 31. The government's counsel are not mind readers.  It's just as likely the jury was wanting to know what the handwritten letter stated and likely believed the letter said something bad about Mr. Mayes. Doc. no. 437, at 24,25. Trial counsel, nor the government, inquired about the hand written letter. And of course, the testimony was not corrected.  After the fact, the government has come up with the implausible claim that Mr. Behenna, by asking about the typed proffer letter after Elliott's clear testimony, Elliott somehow meant there was no handwritten letter and the jury didn't believe there was. Doc. no. 437, at 24, 25. Indeed, the jury was left with the impression there were two letters.   The government can't make Elliott's testimony disappear.  Elliott's perjury at trial and deposition, has tainted all his deposition testimony and his saying he meant Mr. Adams when he said gave it to "them", which does not fall short of intentional lying.

Prior to the handwritten letter testimony, trial counsel wanted to "...**set the timeline**..." with Elliott.  Elliott was then questioned about the proffer letter. Doc. no. 422-3, at Tr. 519. Trial counsel continued by stating, "The key here is that date."   *Id.*   Elliott was then asked if he had ever met the government before being offered immunity [Doc. no. 422-3, at Tr. 520 lines 3-4][7] to which Elliott replied "we gave them a hand written letter...before that." Doc. no. 422-1, at Tr. 520.  The government wants what was said by Elliott to be disregarded and instead, to substitute its interpretation of his unambiguous testimony. The jury heard Elliott testify about the handwritten letter.  This fact was acknowledged at the deposition when the Court succinctly stated, "It says what it says.  So, yes, that was audible in the courtroom."

---

[7]  Mr. Behenna's Affidavit **fails to mention the timeline** he was trying to establish.  It does not address Elliott's testimony and use of the word "before" which established that timeline.   Mr. Behenna did not address the fact the letter Adams wrote to the government was typed and not handwritten.

Doc. no. 422-1, at Tr. 31. Because it was said in front of the jury, it had a dramatic impact on the jury's perception of Elliott's credibility.   The government claims it is "rank speculation" to think the jury believed the letter implicated Mayes and bribery. Doc. no. 437, at 31.  Since Elliott got immunity after the proffer letter, it follows and is *not* speculation the jury would think the handwritten letter implicated Mayes and helped Elliott receive immunity.  It is absurd and unsupported for the government to claim the jury understood Elliot's testimony supposedly meant the proffer letter and that it knows what was in the jury's mind when they heard Elliott testify about the letter.  The government now says the letter doesn't exist, which the jury was not told.  It is rank speculation for the government to claim the "jury knew" Mr. Behenna was talking about the proffer letter and that if Elliott had been asked at trial, "he would have confirmed" he was referring to the attorney proffer letter. Doc. no. 437, at 31. The government has no idea what Elliott would have said.  The government relies solely on the testimony of Elliott, who undisputedly testified falsely at trial and the deposition.   Elliott's testimony he wrote a handwritten letter before counsel's proffer bolstered his credibility to the jury. The government has improperly vouched for Elliott who intentionally lied. *Beasley, Castelbuono, supra.*   Counsel was ineffective for failing to investigate about the handwritten letter.  Mr. Mayes was prejudiced as set forth in his Memorandum.  Doc. no. 422, at 57-60.  The government claims it is up to Mr. Mayes to prove Elliott committed perjury about the handwritten letter. Doc. no. 437 at 27, 28.  Mr. Mayes does not agree.  Elliott's testimony at trial "We gave them a handwritten letter" was false. A *Napue* violation is the "knowing" use of false testimony. The government knew at the time Elliott testified the handwritten letter didn't exist.  The government had a duty to

correct the testimony.  *Napue v. Illinois*, 360 U.S. 264, 269.[8]

**The Evidence was Not Overwhelming**.  Elliott's credibility was an extraordinarily prominent issue.  The jury never knew: 1) Elliott's lie about his use of the Mullins' 302 in writing his notes; 2) Elliott did not tell the government about his handwritten notes; 3) Elliott did not tell government that Mr. Mayes supposedly told him what to say in the handwritten notes; and 4) Elliott didn't tell the government that he had taken the notes to his attorney with his wife.  Ms. Anderson realized  the evidence was not overwhelming and wrongly prejudiced the jury by making the decision to blatantly violate a court order and improperly bring before the jury excluded evidence to bolster the case. The Court asked Ms. Anderson "Does the government have the right to overrule a ruling made by a federal district judge?" The Court reprimanded Ms. Anderson stating, "You can explain that to the Inspector General of the Justice Department, as far as I'm concerned." Vol. X, Tr. 2289, 2456, 2458, 2464. The government contends the evidence was overwhelming "...completely independent of Andy Elliott" and states there were twelve "different" transactions along with witnesses from the transactions which it contends, detailed the fraud engaged in by Mr. Mayes and his company. Doc. no. 437, at 36. None of the consumer witnesses knew Mr. Mayes nor testified he was involved.  Also fatal to overwhelming evidence claim is the jury did not have the material evidence of Elliott's lies.  Mr. Mayes respectfully requests that his motion under U.S.C. §2255 be granted.

---

[8]

The government also never corrected FBI Agent Lowrance making a false statement when he testified on direct that "Donna kind of alluded that Chris Mayes may have been the one that was orchestrating all of this."  Vol 1, Tr. 123.  The next day in cross examination, Agent Lowrance was asked "yesterday...the jury heard you say ... Donna alluded Chris Mayes being involved. Agent Lowrance testified "I did say that.  I remember saying that...If I said that, and that's not true I apologize."  Vol. 2, 180, 181.

Respectfully submitted,


*s/Bill Zuhdi*
Bill Zuhdi, OBA #10013
The Zuhdi Law Firm
P.O. Box 1077
Oklahoma City, OK  73101
(405) 232-1400 (office)
Bill@billzuhdi.com
**ATTORNEY FOR MOVANT/DEFENDANT
BOBBY CHRIS MAYES**


## Certificate of Service

I hereby certify that on September 8, 2025, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to AUSA Thomas Snyder.

s/Bill Zuhdi
Bill Zuhdi